UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRENDA LEE** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-2158** |
| **UNITED STATES OF AMERICA** | **SECTION: "S" (5)** |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff, Brenda J. Lee, sued the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq., alleging that she was injured on February 3, 2004, when she slipped and fell on the floor of the Veterans Administration Hospital (the "VA Hospital") in New Orleans, Louisiana. Lee alleges that she fell because the floor was wet as a result of being recently mopped, and that there was no warning sign cautioning that the floor was slippery, nor a rubber mat to prevent slipping. She alleges that the wet hospital floor created an unreasonably dangerous condition on the defendant's premises, of which the defendant knew or should have known.

The United States denies that the floor was wet from being mopped, and that the slip and fall occurred. Also, the United States argues that, if the slip and fall occurred, a May 9, 2004, automobile accident caused or contributed to Lee's medical complaints, and that all of her injuries were completely resolved by July 23, 2004.

The case was tried to the court without a jury.

**A.     The Federal Tort Claims Act and the Slip and Fall**

Lee brought suit against the United States under the FTCA, which vests district courts with exclusive jurisdiction over "civil actions on claims against the United States, for money damages . . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1). The FTCA "is a limited waiver of sovereign immunity that subjects the Untied States to liability to the same extent as a private party . . . ." Tindall *ex. rel.* Tindall v. Untied States, 901 F.2d 53, 55 (5 th Cir. 1990); see also 28 U.S.C. § 1346(b)(1). Under the FTCA "[t]he court will examine the law of the state where the negligent act or omission occurs to determine liability." Id.; see also 28 U.S.C. § 1346(b)(1). In this case, the state is Louisiana.

Under Louisiana law, the negligence standard of Louisiana Civil Code article 2315 is applied to slip and falls in hospitals.[1] See Holden v. Louisiana State Univ. Med. Ctr-Shreveport, 690 So.2d 958, 961 (La. Ct. App. 1997). "A hospital owes a duty to its visitors to exercise reasonable care commensurate with the particular circumstances." Millet v. Evangeline Health Care, Inc., 839 So.2d 357, 361 (La. Ct. App. 2003) (quoting Neyrey v. Touro Infirmary, 639 So.2d 1214, 1216 (La. Ct. App. 1994)). To establish a negligence claim against a hospital in a slip and fall caused by a foreign substance, the plaintiff must show that the fall and injury occurred and that the injury resulted from the presence of a foreign substance on the hospital's premises, and that the defendant had actual or

---

[1] The Supreme Court of Louisiana has not articulated the standard to apply to visitors in hospital slip and fall cases.

constructive knowledge of the hazard. Id.  Where plaintiff has established a *prima facie* case of liability, the hospital, in order to exculpate itself from liability, must show that it acted reasonably to discover and correct the dangerous condition. Id. (quoting Neyrey, 639 So.2d at 1216).

At trial, Lee testified that on February 3, 2004, she slipped and fell on a wet substance on the floor of the VA Hospital as she was leaving the hospital with her father, who had been released after a two-month stay following a stroke.  She testified that a nurse was pushing her father in a wheel chair and that she was on her father's right side, approximately seven to eight feet from the Perdido Street entrance to the VA Hospital when she fell.  According to Lee, the nurse told her to try not to move, and a security guard approached and said that he had cautioned the janitor who had just mopped to floor to put down a mat.  Lee was brought to the emergency room, and then to the urgent care clinic where x-rays were taken.  Lee left the hospital before she was seen by a doctor because her father was anxious to leave.

On February 4, 2004, the safety department at the VA Hospital generated an accident report documenting Lee's slip and fall.[2]  The report stated that Lee slipped and fell near the Perdido Street entrance and that she reported to the emergency room and received x-rays on her left knee, right shoulder, and right hip. The report stated that corrective action of replacing the rug in the lobby entrance area should be taken.

VA Hospital officer Holly Taylor, III testified on behalf of the United States that he was working at the Perdido street entrance on the day of the accident.  He testified that he did not recall a slip and fall, he did not recall telling Lee that the floor was recently mopped, and he does not recall

---

[2] Plaintiff's Exhibit #1.

bringing Lee to the emergency room. He also testified that there is no record of his leaving the Perdido Street entrance during his shift that day. However, he also testified that it is possible that another VA Hospital officer was present when the accident occurred.

Lee's testimony was corroborated by the VA hospital's own accident report, which showed that Lee had an accident and that corrective action of replacing the mats was needed to prevent such accidents. The report further established that she slipped and fell on the recently mopped wet floor of the VA Hospital, which did not have a mat, or warning signs indicating that the floor was wet, and that the hospital had actual notice of the hazard.

The court finds credible Lee's testimony that the security guard told her that he cautioned the janitor to place a mat on the wet floor. Taylor's testimony that he does not remember the accident and that another officer could have been present when it occurred does not refute Lee's testimony and the accident report.

Once Lee established, by her testimony, corroborated by the accident report, that she fell on a wet floor and injured herself and that the hospital had actual notice of the hazard, the United States could have exculpated itself by showing that it acted reasonably to discover and correct the dangerous condition.[3] The United States did not do so and instead simply denied that the accident

---

[3] The United States attacks the statement by the Louisiana Court of Appeals in <u>Neyrey</u> and <u>Millet</u> that in a slip and fall case against a hospital once the plaintiff has established that an injury was caused by a hazardous substance on the floor of which the hospital had actual or constructive notice, "the burden shifts to the hospital to exculpate itself from liability."
  The United States argues that "this burden shifting is akin to strict liability, which cannot be imposed on the federal government." However, the "burden" referred to in <u>Neyrey</u> and <u>Millet</u> is not the burden of proof, but the burden of persuasion, and the burden does not create strict liability. The standard applied in <u>Neyrey</u> is reasonable care under the circumstances.

happened. The court finds that the VA Hospital (1) failed to exercise reasonable care commensurate with the circumstances because it had actual notice of the hazardous floor condition as shown by the statement of the security guard who cautioned the janitor to place a mat on the wet floor, and (2) failed to take reasonable steps to remedy the situation.

**B.     Lee's Injuries**

Lee testified that she had x-rays of her left knee, right shoulder, and right hip in the VA Hospital's urgent care unit after the slip and fall. The x-rays were negative. Lee testified that she went home after the accident and then went to work, but left work early because of pain.

On February 10, 2004, seven days after the accident, Lee was treated by a doctor at St. Charles General Hospital for pain in her knee, hip, and right arm, and the doctor prescribed an anti-inflammatory medication for pain.

On February 12, 2004, Lee could not get out of bed and was taken to the emergency room at Methodist Hospital in an ambulance. Lee had x-rays of her cervical spine, right shoulder and humerus, which were negative for fracture. The doctor noted that Lee was "post fall with blunt soft tissue trauma, right shoulder."

On February 28, 2004, Lee sought treatment from Dr. Roy Marrero, an orthopedic surgeon. Dr. Marrero noted that Lee had complaints of neck and right arm pain with some tingling in her fingers. He ordered MRIs and prescribed physical therapy. Dr. Marrero released Lee to return to work full time on April 12, 2004.

On April 26, 2004, Lee consulted with Dr. James Butler, an orthopedic surgeon at Tulane University Hospital and Clinic. She complained of neck pain with radiation into her right arm, with

numbness and tingling in her right index and long fingers.  He noted that she had neck pain and possible cervical radiculopathy.  Dr. Butler ordered an MRI of Lee's left knee, and asked Lee to obtain, for his review, the MRI images ordered by Dr. Marrero.

On May 9, 2004, Lee was involved in a minor motor vehicle accident on her way to a Mother's Day brunch from church when a car in which she was a passenger ran a red light and had a front end collision with a pickup truck.  The car was struck on the front passenger's side and Lee was seated in the rear seat behind the driver.  Lee testified that she did not recall any difference in her arm or neck pain after the accident and that she did not make any claims for injuries as a result of the accident.

Lee's son, Brock Caston, was driving the car, and testified that the car was hit on the passenger's side.  He also testified that Lee was in the rear seat behind him; that his aunts were in the front and back passenger's side seats; that his aunts left the scene after the accident to go to the brunch, and that nobody went to the hospital.  Caston further testified that Lee's health did not change after the accident.

Captain Jeff Carradine, of the New Orleans Police Department, investigated the accident.  He testified that Lee was in the front passenger seat.  He classified the damage to the vehicle as moderate to severe, but that the cost of repairs was negligible.

Bryce Sholl, the Progressive Insurance claims agent, interviewed Lee regarding the accident and testified that Lee told him she was "feeling it," reported a burning sensation in her back, and stated that she should have gone to the hospital.  Lee's sisters made injury claims, but Lee and Caston did not.

After the accident, Lee had temporary minor symptoms of pain in the lower back, which is not the same area that was injured in the February 3, 2004, slip and fall at the VA Hospital.

On May 11, 2004, two days after the automobile accident, plaintiff had a physical therapy appointment and reported an increase in her right arm pain. She was informed that she needed a new prescription for additional physical therapy. Lee saw Dr. Butler on June 14, 2004, and discussed the motor vehicle accident with him. He noted that she did not report any subjective worsening of either her neck complaints or left knee pain. Lee resumed physical therapy on July 9, 2004.

On July 12, 2004, Lee reported mild right cervical pain to her physical therapist. On July 17, 2004, she reported minimal cervical pain and denied right arm pain. On July 23, 2004, Lee reported improvement in her pain, and showed improvement in her grip strength.

On May 12, 2006, Dr. Butler saw Lee for a follow up. He discussed the results of her May 4, 2006, MRI, which showed asymmetric broad-based right posterior paracentral/posterolateral protrusion/hernation of the C6-7 disk with associated asymmetrically pronounced right sided lateral recess/foraminal stenosis.

On April 30, 2008, Lee returned to Dr. Butler, complaining of right knee pain with popping, muscle spasms, and swelling. She also complained of neck pain radiating down her right shoulder that was worse with rotation, as well as occasional numbness in her right hand in the fourth and fifth fingers. On May 19, 2008, an MRI of the cervical spine demonstrated evidence of a large, right posterolateral disk herniation at the C6-7 level, and some mild degenerative changes at the C5-6 and C4-5 levels.

Dr. Butler outlined conservative treatment options to Lee for her cervical spine, and on March 9, 2009, suggested epidural steroid injections, as well as prescribing physical therapy.

A June 8, 2010, MRI of the cervical spine demonstrated a prominent right posterolateral disk herniation at the C6-7 level extending into the right foramen, unchanged from its appearance in the MRI of May 19, 2008.

On August 2, 2010, Dr. Butler recommended the epidural steroid injections, which Lee agreed to undergo. On September 13, 2010, and October 11, 2010, Dr. Butler saw Lee after she had undergone epidural steroid injections, and she reported partial improvement of her pain. After two cervical epidural steroid injections, Lee reported an 85-90% relief of her pain. On December 17, 2010, Dr. Butler noted symptoms of right C6-7 disc hernation, improved with epidural steroid injections, and degenerative disc disease at the C4-5 and C5-6 levels. On March 21, 2011, Dr. Butler diagnosed Lee with a disc herniation at the C6-7 level and recommended surgery.

On November 12, 2010, Dr. Butler issued a report in which he opined that in the 2004 hospital slip and fall, Lee sustained an injury to the cervical spine consisting of an aggravation of pre-existing cervical spondylosis and foraminal stenosis, which had progressed to a frank disk herniation at the C6-7 level. He recommended a cervical diskectomy and spinal fusion at the C6-7 level.

At trail, Dr. Butler testified that Lee's complaints regarding the C6-7 level relate to, and were caused by, the February 3, 2004, slip and fall at the VA Hospital. He also testified that Lee's complaints regarding the C5-6 level and the C4-5 level are degenerative changes that are not related

to the slip and fall. Further, he testified that Lee's problems with her left knee were caused by the slip and fall, but that her right knee and right ankle complaints were not.

Additionally, Dr. Butler testified that conservative treatments have failed, and that Lee needs surgery, which she has elected to have, to fuse the disks at C6-7, using her own bone for the graft. Dr. Butler testified that the surgery will require general anaesthesia, three months recovery time, four to six weeks away from work, and that hospital and doctor's fees will be approximately $70,000.

Dr. Butler's testimony is reliable and was not refuted by any medical expert. The court finds that Lee's injury to the C6-7 and her left knee injury were caused by the February 3, 2004, slip and fall at the VA Hospital. The court also finds that Lee requires fusion surgery at the C6-7 level as a result of the slip and fall.

**C.     Apportionment**

Lee may recover from the United States only the portion of her damages which are attributable to her slip and fall. The court finds that her damages after May 9, 2004, are attributable 90% to the slip and fall and 10% to the motor vehicle accident of that date.

**D.     Lee's Damages**

The court awards Lee $15,000 in general damages through May 9, 2004, and $120,000 thereafter, reduced by 10% attributable to the motor vehicle accident, for a total general damages award of $123,000.

The court finds that Lee sustained the following special damages as a result of the February 2, 2004, slip and fall at the VA Hospital:

Past Medical Expenses[4] - $15,839.62

Past Lost Wages[5] - $7,875

Future Medical Expenses for the Surgery[6] - $63,000

Future Lost Wages[7] - $5,752.21

## CONCLUSION

The United States is liable for the damages as set forth above as a result of the slip and fall in the VA Hospital on February 3, 2004. This amount includes the credit of 10% to the United States which the court attributes to increased injuries from the motor vehicle accident of May 9, 2004.

New Orleans, Louisiana, this 27th day of June, 2011.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

---

[4] The amount was calculated by adding the charges that were shown on the medical bills admitted at trial and reducing the charges incurred after May 9, 2004, by 10%. Because there were no documents evidencing the amount incurred by Lee at Diagnostic Imaging Services or for prescription medications, no award is made for these alleged items of damages.

[5] The amount was calculated by multiplying plaintiff's base wage at the time of the accident, $6.25 per hour, by 7.5 hours per day, by 40 days missed. That amount was added to the approximate average tokes, $20 per hour, times 7.5 hours, times 40 days. The 40 days missed was determined by following plaintiff's work pattern for two months prior to the accident. Plaintiff did not miss work after the automobile accident.

[6] Dr. Butler estimated the surgery would cost $70,000. The court accepts his estimate and reduces it by 10%.

[7] The amount was calculated by multiplying plaintiff's most recent base wage shown in the evidence, $6.6306 per hour, by 7.5 hours per day, by 32 days missed. That amount was added to the approximate average tokes, $20 per hour, times 7.5 hours, times 32 days. The total was reduced by 10%. The 32 days missed was determined by following plaintiff's work prior work patterns.